**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD P. GLUNK, MD,** | : | **CIVIL NO. 1:14-CV-659** |
| | : | |
| **Plaintiff,** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **PENNSYLVANIA STATE BOARD** | : | |
| **OF MEDICINE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

**I.     Statement of Facts and of the Case**

Few litigants have enjoyed greater opportunities to exercise their right to due

process than Richard P. Glunk. Over the past ten years Glunk has received due

process in medical malpractice litigation in which he was a defendant, malpractice

litigation arising out of the 2001 death of a patient in his care. The multi-million dollar

verdict initially entered against Glunk in that malpractice action has been reviewed

numerous times by the state courts. Fledderman v. Glunk, 2009 WL 1725946 ( Phila.

Crt of Common Pleas April 24, 2009). Glunk has also been afforded due process in

numerous administrative licensing proceedings conducted by the state. In addition,

Glunk has received further due process consideration as he has actively litigated these

licensing hearing outcomes, and related state Right-to-Know law requests before

1

Pennsylvania's courts, including the Pennsylvania Supreme. Court. See e.g., Glunk v. Dep't of State, 102 A.3d 605 (Pa. Commw. Ct. 2014), reconsideration denied (Dec. 8, 2014), appeal denied, 117 A.3d 299 (Pa. 2015) Glunk v. State Bd. of Med., No. 2730 C.D. 2010, 2011 WL 10893889, at *1 (Pa. Commw. Ct. June 15, 2011). Indeed, his quixotic legal journey has taken Glunk to the United States Supreme Court, but to no avail. Glunk v. Commonwealth of Pennsylvania Bureau of Prof'l & Occupational Affairs (State Bd. of Med.), 133 S. Ct. 571, 184 L. Ed. 2d 340 (2012).

Glunk has also actively exercised his due process rights in other state court proceedings, and has unsuccessfully sought to use the state courts as an avenue to accuse his accusers, suing state officials who participated in his licensing hearings for damages in state court. Glunk v. Greenwald, No. 787 C.D. 2014, 2015 WL 5458407, at *3 (Pa. Commw. Ct. Apr. 7, 2015); Glunk v. Greenwald, No. 2052 C.D. 2012, 2013 WL 5302558, at *3 (Pa. Commw. Ct. Sept. 19, 2013), for text, see 74 A.3d 1186 (Pa. Commw. Ct. 2013). These efforts have been tireless, but fruitless, with all of Glunk's state law claims premised on alleged improprieties in these state proceedings rejected after a careful consideration by the courts. Id.

In addition, Glunk has litigated matters relating to the issues he now raises in this lawsuit in the course of protracted bankruptcy proceedings, as he has resisted efforts by his judgment creditors to recover from him. In re Glunk, 455 B.R. 399

(Bankr. E.D. Pa. 2011); In re Glunk, No. 05 31656 ELF, 2009 WL 2916975, at *2 (Bankr. E.D. Pa. May 26, 2009); In re Glunk, 343 B.R. 754 (Bankr. E.D. Pa. 2006).

Finally, Glunk has filed federal civil rights lawsuits relating to these matters in two separate federal district courts. See Glunk v. Noone, No. CV 15-5565, 2016 WL 2866173, at *1 (E.D. Pa. May 16, 2016); Glunk v. Pennsylvania State Bd. of Med., No. 1:14-CV-00659, 2016 WL 3220619, at *1 (M.D. Pa. June 10, 2016); Glunk v. Pennsylvania State Bd. of Med., No. 1:14 CV 659, 2016 WL 3392373, at *1 (M.D. Pa. Mar. 14, 2016), report and recommendation adopted, No. 1:14-CV-00659, 2016 WL 3220619 (M.D. Pa. June 10, 2016); Glunk v. Pennsylvania State Bd. of Med., No. 1:14-CV-659, 2015 WL 6690023, at *1 (M.D. Pa. Oct. 30, 2015), reconsideration denied, No. 1:14-CV-659, 2015 WL 7294456 (M.D. Pa. Nov. 19, 2015); Glunk v. Pennsylvania State Bd. of Med., No. 1:CV-14-659, 2015 WL 5785692, at *1 (M.D. Pa. Sept. 29, 2015); Glunk v. Pennsylvania State Bd. of Med., No. 1:14-CV-00659, 2015 WL 631025, at *1 (M.D. Pa. Feb. 12, 2015). These efforts have also been largely unsuccessful, with the courts dismissing various claims advanced by Dr. Glunk as a pro se litigant on numerous occasions. Id.

Undeterred by this singular lack of success, and equating this lack of success on the merits of his claims with a denial of due process, Glunk has now filed a second amended complaint in this lawsuit, a complaint which reprises many familiar themes

that have recurred throughout this litigation, and have been addressed by state and

federal courts on numerous occasions in the past. The factual background of this

protracted dispute was aptly summarized by the district court in 2015 when it

dismissed a prior iteration of Glunk's *pro se* complaint on *res judicata* grounds.  At

that time the court explained that:

> This case concerns the Plaintiff-physician's protracted disciplinary
> proceedings before the Defendant–State medical board and its affiliates
> after the 2001 death of a teenage liposuction patient. (Doc. No. 1 ¶¶
> 22–27.) Plaintiff, a plastic surgeon, alleges that Defendants violated his
> constitutional rights in the course of the disciplinary process. (Id.)
> Plaintiff names as defendants the state medical licensing agency, the
> Pennsylvania Department of State, and several individuals involved in
> investigating and prosecuting Plaintiff's cases. (Id.)

> Long after the 2001 death of a high-profile patient, the Commonwealth
> of Pennsylvania brought two disciplinary actions against Plaintiff within
> the medical board administrative system, first in 2006 and then again in
> 2009. (Doc. No. 13 at 4–5.) The first concerned allegations that
> Plaintiff's medical performance fell below minimum acceptable
> standards of care, and that proceeding was ultimately dismissed on the
> merits. (Doc. No. 1–1 at 9.) The second concerned allegations that
> Plaintiff made improper overtures and financial contributions to
> members of the adjudicative medical board in connection with the first
> proceeding. (Doc. No. 13 at 4–5.) In 2010, the board, acting through a
> designee, found Plaintiff guilty of misconduct, suspended his medical
> license for 60 days and fined him $5,000. Glunk v. State Bd. of Med.,
> No. 10–2730, 2011 WL 10893899, at *1 (Pa. Commw. Ct. June 15,
> 2011). The board determined, and the Commonwealth Court affirmed on
> appeal, that Plaintiff was subject to discipline for "meeting with a Board
> member, making a contribution to a political campaign supported by and
> through the Board member, and making a contribution to the Board
> member's synagogue with intent to influence [the medical board's
> decision]." Id. The Pennsylvania Supreme Court denied Plaintiff's appeal

from the Commonwealth Court. (Doc. No. 1 ¶ 108.)

Nearly three years later, on April 7, 2014, Plaintiff filed his complaint in this action, arguing that the procedures used in his second disciplinary proceeding violated his due process rights. (Id. ¶¶ 93–95.) According to Plaintiff, the medical board improperly designated a single hearing officer to conduct the proceedings, and the hearing officer had an established bias against him. (Id. ¶¶ 51–55.) Plaintiff also claims that he was denied the usual right to appeal the hearing officer's decision to the medical board. (Id. ¶ 58.) Plaintiff argues that he was denied the process due to him under Pennsylvania administrative procedure and the United States Constitution during the course of the defective proceedings. (Id. ¶¶ 105–107.)

Glunk v. Pennsylvania State Bd. of Med., No. 1:14-CV-00659, 2015 WL 631025, at *1 (M.D. Pa. Feb. 12, 2015).

Having framed the factual issues in this dispute in this fashion, the court then

dismissed Glunk's complaint holding that: " based on the record as it existed before

Plaintiff filed objections, *res judicata* bars Plaintiff's claims. The Commonwealth

Court ruled on the question of Plaintiff's due process rights in its opinion affirming the

medical board. In addition, Defendants here were prosecutors in the other case, or in

privity with the prosecuting entity. Therefore, the Court finds that claim preclusion

bars the claims in Plaintiff's complaint." Glunk v. Pennsylvania State Bd. of Med., No.

1:14-CV-00659, 2015 WL 631025, at *3 (M.D. Pa. Feb. 12, 2015). The district court

observed, however, that Glunk had endeavored to raise some new matters in the

course contesting the dismissal of this action. Therefore, Glunk was given yet another

opportunity to enjoy due process, and was permitted to file an amended complaint, in a final effort to state a claim upon which relief may be granted.

After several false starts, Glunk has availed himself of this opportunity and filed a second amended complaint, (Doc. 66), a 65-page, 435-paragraph documents which restates, re-packages, and reasserts many of his prior long-standing and discredited objections to these state licensing proceedings, while adding to these oft-stated allegations a speculative gloss that the receipt by the Medical Board of correspondence from an attorney who had successfully sued Dr. Glunk for his 2001 alleged malpractice so infected these proceedings that he was denied due process. Glunk makes this claim even though the Board actually recused itself from the proceedings which led to his license suspension, and notified Glunk's counsel of this correspondence. Furthermore, Glunk advances this claim despite the fact that there is no evidence that the actual adjudicator in this disciplinary hearing ever saw this letter. Moreover, the letter itself seems to largely deal with matters which are distinct from the allegations of trying to exert improper influence upon a board member in Glunk's prior disciplinary hearing. Therefore, Glunk provides no explanation of how this letter, which expressed dismay over past rulings on prior unrelated allegations, could have infected decision-making in his subsequent case. Finally, Glunk takes the position that this activity rises to the level of a fundamental denial of due process,

even though he litigated these claims in state court, but to no avail. <u>See</u>  <u>Glunk v. State Bd. of Med</u>., No. 2730 C.D. 2010, 2011 WL 10893889, at *1 (Pa. Commw. Ct. June 15, 2011).

As to these matters the well-pleaded facts in Glunk's complaint, and other undisputed court records, reveal that in 2006 attorneys employed by the Pennsylvania Department of State initiated disciplinary proceedings against Dr. Glunk based on several instances of alleged medical malpractice including the 2001 fatal medical mishap which had led to civil litigation against the doctor. (Doc. 66, ¶51.) In September 2008, that action was dismissed, (<u>id</u>., ¶58), and in February of 2009 the Pennsylvania State Board of Medicine upheld this dismissal. (<u>Id.</u>, ¶61.) The prosecuting agency counsel filed a motion to reconsider this ruling in March of 2009, which also raised new matters, an alleged effort by Glunk to influence the board through payments made and offered to a board member. (<u>Id.</u>, ¶77.) The Board, however, declined on April 1, 2009 to reconsider this decision. (<u>Id.</u>, ¶84.)

Approximately six months later, in September of 2009, a separate free-standing disciplinary action was brought against Glunk based upon the new matter alluded to in this request for reconsideration, the allegation that  Glunk attempted to influence the Board through payments made and offered to a board member. (<u>Id.</u>, ¶88.) Shortly after this new action commenced, in December of 2009, the attorney who had

7

represented the fammily of the patient who died under Dr. Glunk's care in 2001 wrote to the Board regarding the dismissal of the initial disciplinary action against Glunk. While the fact of this correspondence was disclosed to Glunk's counsel and efforts were made to prevent disclosure of the correspondence to all board members, it appears that at least one board member may have received a copy of this letter. Therefore, acting out of an abundance of caution and in recognition of the fact that the latest claims leveled against Dr. Glunk involved alleged efforts to improperly influence the board itself, the State Board of Medicine recused itself entirely from consideration of Glunk's sceond disciplinary matter on March 24, 2010. Instead, the resolution of that disciplinary matter was left in the hands of a single administrative judge. (Id.,¶142.) On December 2, 2010, this hearing officer issued a decision suspending Glunk's medical license for 60 days. (Id., ¶168.)

Glunk appealed this agency adjudication through the Pennsylvania courts, arguing, *inter alia,* issues relating to the recusal of the board, claiming bias on the part of the agency administrative judge, and asserting that it was improper for the single agency administrative judge to resolve this matter. Glunk's claims on this score were carefully considered, but rejected, by the state courts which found no error in the recusal decision of the state board. Glunk v. State Bd. of Med., No. 2730 C.D. 2010, 2011 WL 10893889, at *3 (Pa. Commw. Ct. June 15, 2011).

It is against this backdrop, that Glunk now reprises due process claims based upon what he perceives to have been a globally biased and unfair process. (Doc. 66.) Glunk's second amended complaint lists 16 individual and institutional defendants, including some defendants who have been newly named in this lawsuit after years of prior litigation. (Id.) These defendants include both the decision-maker in Glunk's disciplinary hearing as well as those Board members who recused themselves from participating in that hearing, and the due process claim advanced by Glunk is breath-taking in its scope and wholly speculative in its content. Glunk's view seems to be that the entire proceeding in this case, including the ethically scrupulous decision of the Board to recuse itself from this hearing, masks a clandestine, yet global, effort to discriminate against him. Yet, given the Pennsylvania courts' ruling rejecting Glunk's appeal of these disciplinary and recusal decisions, the scope of any conspiracy would have to be astonishingly far-reaching. Thus, this agreement would have to include as witting or unwitting participants the Pennsylvania Commonwealth Court, which upheld this decision;  Glunk v. State Bd. of Med., No. 2730 C.D. 2010, 2011 WL 10893889, at *3 (Pa. Commw. Ct. June 15, 2011), as well as the Pennsylvania and United States Supreme Courts, both of which allowed this ruling to stand. See e.g., Com. Bureau of Prof'l & Occupational Affairs v. Glunk, 615 Pa. 780, 42 A.3d 295 (2012); Glunk v. Commonwealth of Pennsylvania Bureau of Prof'l & Occupational

Affairs (State Bd. of Med.), 133 S. Ct. 571, 184 L. Ed. 2d 340 (2012).

The defendants have now filed three motions to dismiss this second amended complaint. (Docs. 72, 73, and 74.) These motions, which raise plethora of objections to this latest pleading, are fully briefed and are, therefore, ripe for resolution.

For the reasons set forth below, it is recommended that the motions to dismiss be granted, and that Glunk's second amended complaint be dismissed**.**

## II.   **Discussion**

### A.   **Standard of Review: Motion to Dismiss**

In this case the defendants have filed three motions to dismiss Glunk's second amended complaint, the latest in a series of pleadings filed by Glunk over the years reprising similar claims in different legal forums.   A motion to dismiss serves a specific purpose under the law. A motion to dismiss is designed to test the legal sufficiency of a complaint. Thus, Rule 12(b)(6) of the   Federal Rule of Civil Procedure provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 570 (2007) (abrogating "no set of facts" language found in <u>Conley v.</u> <u>Gibson</u>, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. <u>Id</u>. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting <u>Twombly</u>, 550 U.S. at 555). Thus, "[a]t the motion to dismiss stage, we accept as true all factual assertions, but we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements. <u>See Iqbal</u>, 556 U.S. at 678–79, 129 S.Ct. 1937; <u>Twombly</u>, 550 U.S. at 555–57, 127 S.Ct. 1955; <u>Burtch</u>, 662 F.3d at 220–21." <u>James v. City of</u> <u>Wilkes-Barre</u>, 700 F.3d 675, 681 (3d Cir. 2012).

As the court of appeals has observed: "The Supreme Court in <u>Twombly</u> set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' <u>Twombly</u>, 550 U.S. at 570,

127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

Thus, in assessing a motion to dismiss the court engages in a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263,

268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Judged against these legal guideposts, for the reasons set forth below, we submit that Glunk's second amended complaint fails to state a claim upon which relief may be granted and should be dismissed.

## B.   Glunk's Second Amended Complaint Should Be Dismissed

Dr. Glunk's latest filing underscores the wisdom of another doctor, Albert Einstein, who once observed that doing the same thing over and over against and

expecting different results was one of the highest forms of human folly. Indeed, our review of this pleading suggests that it is fatally flawed in at least four very basic and fundamental ways, and is, therefore, subject to dismissal.

The fatal deficiencies in this complaint are detailed separately below.

### 1. This Complaint Violates Rule 8 of the Federal Rules of Civil Procedure

At the outset, dismissal of this second amended complaint is warranted because the complaint fails to comply with Rule 8's basic injunction that: "A pleading that states a claim for relief must contain . . . *a short and plain statement of the claim* showing that the pleader is entitled to relief." Dismissal of this complaint is appropriate since it is well-settled that: "[t]he  Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." Scibelli v. Lebanon County, 219 F. App'x 221, 222 (3d Cir. 2007). Thus, when a complaint is "illegible or incomprehensible", id., or when a complaint "is also largely unintelligible," Stephanatos v. Cohen,  236 F. App'x 785, 787 (3d Cir. 2007), an order dismissing a complaint under Rule 8  is clearly appropriate.  See, e.g., Mincy v. Klem, 303 F. App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F. App'x 513 (3d Cir. 2008);  Stephanatos v. Cohen. supra;  Scibelli v. Lebanon County, supra;

Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 450 n.1 (5th Cir. 2005).

Furthermore, dismissal under Rule 8 is proper when a complaint "left the defendants

having to guess what of the many things discussed constituted [a cause of action];"

Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011), or when the

complaint is so "rambling and unclear" as to defy response. Tillio v. Spiess, No. 11-

1276, 2011 WL 3346787 (Aug. 4, 2011). Finally, a complaint may be dismissed under

Rule 8 when the pleading is simply illegible and cannot be understood. See, e.g., Moss

v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint);

Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v.

Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails

to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob.,

CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing

complaint consisting of approximately 50 pages of mostly-illegible handwriting);

Gearhart v. City of Philadelphia Police, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa.

Feb. 21, 2006) (dismissing illegible complaint).

Here, Glunk's second amended complaint is voluminous, but largely

conclusory, and is filled with speculative, angry  averments masquerading as facts.

Thus, the complaint hardly "contain[s] 'a short and plain statement of the claim

showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and [fails to meet

Rule 8's requirement] that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." Scibelli v. Lebanon County, 219 F. App'x 221, 222 (3d Cir. 2007).  Further, the more than 430 factual averments set forth in the complaint consist of a catalogue of accusations regarding rulings in prior proceedings, accusations which are often cast in conclusory terms. Given Glunk's combination and conflation of matters new and old, factual and speculative,  we are  "left . . . having to guess what of the many things discussed constituted [a cause of action]."  Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011). In such instances, Rule 8 calls for the dismissal of the complaint.

>    **2.**     **To the Extent That Glunk Seeks to Re-litigate Claims That Were Previously Dismissed, the Law of The Case Doctrine and Principles of Collateral Estoppel Apply and Bar Re-litigation of These Matters**

In addition, Glunk's second amended complaint appears to attempt to re-litigate matters  which have previously been conclusively resolved by the state and federal courts relating to the conduct of this prior disciplinary proceeding. In our view, upon a review of this, Glunk's latest lawsuit, the law of the case doctrine, *res judicata*, collateral estoppel and issue preclusion principles all apply and compel dismissal of any of the previously litigated claims that are made by the plaintiff in this complaint relating to the past administrative proceeding brought against him.

Collateral estoppel, *res judicata* and issue preclusion are doctrines which play

a vital role in litigation. It has long been recognized that "[t]he doctrine[] of . . . collateral estoppel, now  . . termed . . . issue preclusion, 'shar[es] the common goals of judicial economy, predictability, and freedom from harassment....' <u>Gregory v. Chehi</u>, 843 F.2d 111, 116 (3d Cir.1988). Generally speaking, the . . . doctrine of issue preclusion, 'precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted.' <u>Melikian v. Corradetti</u>, 791 F.2d 274, 277 (3d Cir.1986)." <u>Electro-Miniatures Corp. v. Wendon Co., Inc</u>. 889 F.2d 41, 44 (3d. Cir.1989)(citations omitted).

The parameters of this doctrine, which precludes relitigation of certain issues, have been defined by the United States Court of Appeals for the Third Circuit in the following terms:

> Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " <u>Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co.</u>, 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting <u>In re Graham</u>, 973 F.2d 1089, 1097 (3d Cir.1992)); <u>see also Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326, n. 5(1979). In its classic form, collateral estoppel also required "mutuality"-i.e., that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding. <u>Parklane Hosiery</u>, 439 U.S. at 326-27. Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior

proceeding against a different adversary. See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane Hosiery, 439 U.S. at 329. For . . . non-mutual issue preclusion [] to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action. See Parklane Hosiery, 439 U.S. at 328; Blonder-Tongue Labs., 402 U.S. at 331.

Peloro v. United States, 488 F.3d 163, 174-5 (3d Cir. 2007).  Stated succinctly, principles of collateral estoppel compel a later court to honor the an earlier decision of a matter that was actually litigated.  Dici v. Commonwealth of Pa., 91 F.3d 542 (3d Cir. 1997). This doctrine, which involves an assessment of the overlap between issues presented in separate lawsuits, raises essentially legal questions which are often amenable to resolution by courts as a matter of law. See, e.g., Peloro v. United States, supra; Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc, supra; Witkowski v. Welch, 173 F.3d 192, 198-205 (3d Cir. 1999); Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.,, 63 F.3d 1227, 1231-9 (3d Cir. 1995)(summary judgment, offensive issue preclusion).

Here, we find that, with respect to the claims made by Glunk regarding the alleged unfairness of the prior state administrative proceedings, the legal requisites for issue preclusion are fully satisfied, since:  " '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai

18

Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). Therefore, these claims should be dismissed.

Indeed, this was precisely the conclusion reached by the district court in February of 2015, when it dismissed Glunk's initial complaint in this lawsuit on *res judicata* grounds. Glunk v. Pennsylvania State Bd. of Med., No. 1:14-CV-00659, 2015 WL 631025, at *3 (M.D. Pa. Feb. 12, 2015). Given this prior ruling, we believe that the law of the case doctrine also applies here and compels dismissal of this action. "Under the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances. . . . . The purpose of this doctrine is to promote the 'judicial system's interest in finality and in efficient administration. Todd & Co., Inc. v. S.E.C., 637 F.2d 154, 156 (3d Cir. 1980).' " Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 165 (3d Cir. 1981). The contours of this settled doctrine were described by the United States Court of Appeals for the Third Circuit in the following terms:

> In Arizona v. California, 460 U.S. 605 (1983), the Supreme Court noted:
>
>> Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.

Id. at 618 (citations omitted). The "[l]aw of the case rules have developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'"

In re Pharmacy Benefit Managers Antitrust Litigation, 582 F.3d 432, 439 (3d Cir.2009)(reversing arbitration order in antitrust case on law-of-the-case grounds)(citations omitted). It is clear that "[t]he ... doctrine does not restrict a court's power but rather governs its exercise of discretion." Id. (quoting Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron Inc., 123 F.3d 111, 116 (3d Cir.1997)) (citations omitted). In exercising that discretion, however, courts should "be loathe to [reverse prior rulings] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." Id.( quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)). In addition to that narrow class of cases where the prior ruling was manifestly unjust, the type of "extraordinary circumstances" that warrant a court's exercising its discretion in favor of reconsidering an issue decided earlier in the course of litigation typically exist only where (1) new evidence is available, or (2) a supervening new law has been announced. Id. (citing, Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997)).

Here we find that there is nothing in Glunk's second amended complaint–which consists largely of a regurgitation of prior discredited claims, coupled with a

speculative gloss that the receipt by the Medical Board of correspondence from an attorney who had successfully sued Dr. Glunk for his 2001 alleged malpractice so infected these proceedings that he was denied due process– which satisfies this extraordinary circumstances standard and justifies foregoing the law of the case. There has been no supervening change in the law. Further, despite Glunk's efforts to cast factual nuances regarding longstanding claims as newly discovered evidence, the essence of these claims, and their factual grounds, remain substantially unchanged over the years. Finally, the outcome of these prior proceedings reveals no manifest injustice or extraordinary circumstances requiring judicial intervention. Therefore, under the law of the case doctrine, these claims are also barred.

3.      The Favorable Termination Rule Applies Here and Bars Further Consideration of This Case

In addition, to the extent that Glunk is posits some sort of malicious prosecution civil rights theory, this second amended complaint runs afoul of another, immutable obstacle. Glunk has been found to have engaged in professional misconduct and that finding has been repeatedly upheld by the courts. Thus, Glunk seems to premise this malicious prosecution claim upon a judgment which remains valid, and has been affirmed by the courts in the past.

This he may not do. To prove malicious prosecution under § 1983, a plaintiff must establish the following elements: (1) the defendant initiated a . . .  proceeding; (2) the . . .  proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003) (malicious prosecution)

(3 For purposes of the second element, that the proceeding have ended in the plaintiff's favor, the Third Circuit Court of Appeals has instructed that for a malicious prosecution claim to lie, the underlying proceedings must have *entirely* terminated in the plaintiff's favor.  Kossler v. Crisanti, 564 F.3d 181, 186-87 (3d Cir. 2009).  This means that "a malicious prosecution claim cannot be predicated on an underlying . . . proceeding which terminated in a manner not indicative of the innocence of the accused."  Id. at 187; see also Heck v. Humphrey, 512 U.S. 477, 484 (1994) (holding that the purpose of the favorable termination rule is to avoid "the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction."); Donahue v. Gavin, 280 F.3d 371, 383 d Cir. 2002) (holding that a prior case must

have been disposed of in a manner that indicates the innocence of the accused in order to satisfy the favorable termination element).

The United States Court of Appeals for the Third Circuit has extended this favorable termination rule to civil rights claims arising out of state licensing board disciplinary hearings. In this context the court has stated that: "a defendant may not be found liable unless ... [t]he proceedings have terminated in favor of the person against whom they are brought." Wyatt v. Keating, 130 F. App'x 511, 516 (3d Cir. 2005). Application of this familiar principle to the instant case, also compels dismissal of any malicious prosecution claim since it is undeniable that Glunk's state licensing disciplinary hearing did not terminate favorably for the plaintiff, who was disciplined for his attempt to influence a board member. Since one requirement of malicious prosecution is that the prior proceedings must have terminated in the plaintiff's favor, the immutable fact that Glunk was disciplined for professional misconduct, and that finding was never set aside, presently defeats any federal civil rights claims based upon malicious prosecution in this state case, and compels dismissal of these claims. In short, this complaint is based upon the fundamentally flawed legal premise that Glunk can sue state officials for malicious prosecution even though he was found to have engaged in professional misdeeds, and that agency finding stands undisturbed to this day. Since this premise is simply incorrect, Glunk's second amended

complaint fails as a matter of law under the favorable termination rule.

    4.    <u>Glunk Has Failed to State a Valid Procedural Due Process Claim</u>

Finally, this lawsuit fails because Glunk's second amended complaint, while prolix, fails to state a viable procedural due process claim. Quite the contrary, this procedural due process claim is defeated by a simple truth: Glunk has received extraordinary and extensive due process consideration of this matter from many courts over many years. On this score, Glunk must meet exacting standards to plead and prove a procedural due process claim.

> "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.' " <u>Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir.2006)</u> (quoting <u>Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir.2000)</u>). "Due process requires that a deprivation of property be preceded by notice and an opportunity for hearing appropriate to the nature of the case, and the opportunity to be heard must be at a meaningful time and in a meaningful manner." <u>Midnight Sessions, Ltd. v. City of Phila., 945 F.2d 667, 680 (3d Cir.1991)</u>, overruled on other grounds by <u>United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir.2003)</u> (internal quotation marks and citations omitted). A person afforded a full judicial proceeding in which to challenge an administrative decision has been provided adequate procedural due process. <u>DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 597 (3d Cir.1995)</u>, overruled on other grounds by <u>United Artists, 316 F.3d 392</u>.

<u>Tripodi v. N. Coventry Twp.</u>, No. CIV.A. 12 4156, 2013 WL 4034372, at *7 (E.D. Pa. Aug. 8, 2013), <u>aff'd</u>, 616 F. App'x 521 (3d Cir. 2015).

In the instant case, Glunk has undeniably been provided all of the requisites of procedural due process. He has had notice and an opportunity to be heard. Moreover, he has been granted a full opportunity to seeks judicial review of this administrative action suspending his medical license for 60 days. In short, all of the process that was due to Glunk has been afforded to him in this case.  Glunk nonetheless seems to insist, based upon a speculative and amorphous conspiracy allegation, that various recusal decisions made in the course of these proceedings revealed a fundamental due process violation.

We disagree.

In our view, any recusal-based due process claim fails for at least four reasons. First, such a claim ignores the fact that the State Board of Medicine did recuse itself from consideration of this matter. Thus, Glunk is in the curious position of basing his claims against numerous state board members upon the ethically scrupulous decision of the board to recuse itself.  To state a constitutional tort claim the plaintiff must show that the defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in

the challenged practice. <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286 (3d Cir. 1997).
Here, where the undisputed evidence shows that the Board recused itself and played
no role in this disciplinary decision, Glunk simply has not shown that these officials
participated in, or acquiesced in any alleged wrongdoing. Therefore, his claims against
these defendants fail as a matter of law.

Second, Glunk's apparent claim that the hearing officer who decided this case
should have also recused herself fails to state a valid procedural due process claim
against this defendant for at least two reasons. First, this claim rests on nothing more
than rank speculation by Glunk that this hearing officer may also have been biased.
Yet, this precise claim was considered, and rejected, by the state courts. <u>Glunk v. State
Bd. of Med.</u>, No. 2730 C.D. 2010, 2011 WL 10893889, at *1 (Pa. Commw. Ct. June
15, 2011). In addition, beyond being wholly speculative, this claim fails on its merits
since this adjudicator is immune from civil liability, given that state agency
administrative law judges are cloaked in immunity from civil liability for their quasi-
judicial acts. <u>See Keystone Redevelopment Partners, LLC v. Decker</u>, 631 F.3d 89, 91
(3d Cir. 2011). Thus, any constitutional claim leveled against the adjudicator in this
state licensing proceeding based upon her adjudicatory function fails as a legal matter
based upon this longstanding quasi-judicial immunity.

In short, given the well-pleaded facts of this case neither the ethically-

scrupulous decision of the Board to recuse itself from Glunk's case, nor Glunk's vague speculation that the agency adjudicator should have also recused herself, constitute a viable due process claim.

Third, we note that it appears that Glunk litigated some of these recusal and bias issues in the state courts, but lost. <u>Glunk v. State Bd. of Med.</u>, No. 2730 C.D. 2010, 2011 WL 10893889, at *1 (Pa. Commw. Ct. June 15, 2011). Thus, stripped to its essence, much of Glunk's remaining procedural due process claim consists of an effort to re-litigate rulings of agency recusal matters. To the extent that Glunk seeks to use this lawsuit as a vehicle for this specific purpose, the <u>Rooker-Feldman</u> doctrine, which prohibits parties from collaterally attacking state court rulings in federal district court, bars further consideration of past state court recusal decisions. <u>Fieger v. Ferry</u>, 471 F.3d 637, 643 (6th Cir. 2006)(<i>held</i>, <u>Rooker-Feldman</u> bars reexamination of past state recusal decisions).[1]

Finally, this procedural due process claim fails because as a general matter it has been held that the mere allegation that an adjudicator should have recused himself

---

[1]We recognize that the district court has previously held that a prior version of this complaint lawsuit was not subject to dismissal in its entirety on <u>Rooker-Feldman</u> grounds. Nothing in this recommendation is intended to re-open this past ruling. Rather, we merely note that this belated effort to relitigate past recusal decisions, which now seems to lie at the heart of Glunk's second amended complaint, would seem to run afoul of the <u>Rooker-Feldman</u> doctrine.

or herself from hearing a case, standing alone, does not allege a viable due process allegation. Shepherdson v. Nigro, 5 F. Supp. 2d 305, 309 (E.D. Pa. 1998)(denying due process claim based upon alleged failure to recuse). In this setting a viable due process claim cannot rest upon speculation regarding a potential a conflict of interest. Much more must be proven. Indeed, only in instances of the most direct sort of conflict of interest, such as where the prosecutor in a death penalty case later sits as a judge reviewing that case, have recusal decisions implicated a litigant's due process rights. Williams v. Pennsylvania, 136 S. Ct. 1899, 1906, 195 L. Ed. 2d 132 (2016).

Glunk makes no such claims here. Instead, he acknowledges that the State Board of Medicine did recuse itself from his case, but simply invites us to speculate that the hearing officer should have recused herself as well. Since this speculation does not meet the exacting standards needed to state a procedural due process claim, we should decline Glunk's invitation, and dismiss this complaint.

In short, while we recognize the anger which seemingly drives the plaintiff's efforts over many years to repeatedly relitigate this case, Glunk errs when he equates his lack of success on the merits of his claims with a denial of due process. Instead, as to this disciplinary action, it may simply be time for the plaintiff to acknowledge that the fault for this state agency action does not lie with a corrupt system, or a pervasive but amorphous conspiracy. In short, for Dr. Glunk it may be time to concede

that on this matter: "The fault . . . lies not in our stars, but in ourselves." Julius Caesar,

Act 1, scene 2.

## III.   __Recommendation__

For the foregoing reasons, IT IS RECOMMENDED that the defendants'

motions to dismiss, (Docs. 72, 73, and 74) be GRANTED , and this second amended

complaint be DISMISSED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen
(14) days after being served with a copy thereof. Such party shall file
with the clerk of court, and serve on the magistrate judge and all parties,
written objections which shall specifically identify the portions of the
proposed findings, recommendations or report to which objection is
made and the basis for such objections. The briefing requirements set
forth in Local Rule 72.2 shall apply. A judge shall make a de novo
determination of those portions of the report or specified  proposed
findings or recommendations to which objection is made and may
accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge. The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis of
that record. The judge may also receive further evidence, recall witnesses
or recommit the matter to the magistrate judge with instructions.

Submitted this 12th day of September, 2016.

_**S/Martin C.  Carlson**_

**Martin C. Carlson**
**United States Magistrate Judge**